UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOHN CARTER,

       Plaintiff,

          -against-

TUTTNAEUR U.S.A. CO., LTD.,

       Defendant.

----------------------------------------------------------X

**DECISION AND ORDER**
13-CV-00679 (ADS)(ARL)

**APPEARANCES:**

**Frank & Associates, P.C.**
*Attorneys for the Plaintiff*
500 Bi-county Blvd, Ste 112n
Farmingdale, NY 11735
       By:  David D. Barnhord, Esq., Of Counsel

**Lipman & Plesur, LLP**
*Attorneys for the Defendant*
500 North Broadway
Suite 105
Jericho, NY 11753-2131
       By:  Robert D. Lipman, Esq.
            David A. Robins, Esq., Of Counsel

**SPATT, District Judge**.

On February 6, 2013, the Plaintiff John Carter (the "Plaintiff") commenced this action pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the New York Labor Law, Article 19, § 650 *et seq.*, and certain supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142.  The Plaintiff also asserts a claim of unjust enrichment under New York law.

On November 27, 2013, the Court "so ordered" a stipulation dismissing the Plaintiff's FMLA claim.

Boiled to its essence, the Plaintiff alleges that he regularly worked more than forty hours a week while employed by the Defendant Tuttneaur U.S.A. Co., Ltd (the "Defendant") and, therefore, he was entitled under the FLSA and New York labor law to be paid certain overtime pay. According to the Plaintiff, the Defendant misclassified him as exempt under those laws and, during the relevant time period, paid him a fixed weekly salary of approximately $600 per week, regardless of the actual number of hours per week he worked. The Plaintiff subsequently brought this action to recover, among other items, alleged unpaid overtime pay.

On March 28, 2014, the Defendant moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 for summary judgment dismissing the complaint. The Defendant argues that the Plaintiff is exempt from the FLSA and the New York labor law by virtue of the Motor Carrier Act ("MCA") exemption, set forth in 29 U.S.C. § 213(b)(1) of the FLSA. The Defendant also argues the Plaintiff's unjust enrichment claim should be dismissed as duplicative of his statutory overtime pay claims.

For the reasons set forth, the Defendant's motion for summary judgment is granted in part and denied in part.

## I. BACKGROUND

Unless otherwise stated, the following facts are drawn from the parties' Rule 56.1 Statements and exhibits and construed in a light most favorable to the non-moving party, the Plaintiff. Triable issues of fact are noted.

According to the complaint, the Defendant is a New York-corporation that manufactures and/or provides a wide range of cleaning, disinfection and sterilization products.

The Plaintiff worked for the Defendant from March 12, 2007 through December 28, 2012. The Defendant states that the Plaintiff's duties regularly included loading trucks carrying the Defendant's products and parts. These trucks were not owned by the Defendant, but rather by third-party carriers such as FedEx and UPS. The Plaintiff asserts that his duties included shipping packages, packing packages, receiving parts, and loading and unloading merchandise from the trucks.

The Defendant assert that some of the trucks the Plaintiff loaded weighed more than 10,001 pounds, but the Plaintiff disputes this assertion.

The Plaintiff was authorized, trained, and certified to load the trucks. The Defendants state that the Plaintiff was trained and became OSHA certified to drive a forklift to load the trucks, but the Plaintiff disputes this assertion.

The Defendant contends that the Plaintiff retained discretion and judgment in loading goods and keeping weight loads safe for the truck. The Plaintiff contends that he lacked any such discretion and that he simply used a forklift to carry the Defendant's merchandise to the trucks.

## II.  DISCUSSION

A.  <u>The Legal Standard on Summary Judgment</u>

Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. <u>Nunn v. Mass. Cas. Ins. Co.</u>, 758 F.3d 109, 114 n. 4

(2d Cir. 2014). Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue for trial, and cannot rely merely on allegations or denials contained in the pleadings. See Fed. R. Civ. P. 56(c); accord Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011)(citation omitted).

B.  The FLSA and NYLL Claims

Congress enacted the FLSA in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," 29 U.S.C. § 202(a), and to "guarantee [ ] compensation for all work or employment engaged in by employees covered by the Act." Tennessee Coal, Iron & Railroad Company v. Muscoda Local No. 123, 321 U.S. 590, 602, 64 S. Ct. 698, 88 L. Ed. 949 (1944). As part of that effort, the FLSA imposes numerous "wage and hour" requirements, including overtime pay, which is at issue in this case. 29 U.S.C. § 207.

Here, the Defendant does not dispute that the FLSA generally applies to its business. Rather, the Defendant argues that the Plaintiff falls within one of the exemptions to the overtime provisions of the FLSA, namely the Motor Carrier exemption.

Exemptions to the FLSA are "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirits." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S. Ct. 453, 4 L. Ed. 2d 393 (1960). Defendants bear the burden of proving that the exemption applies. Bilyou v. Dutchess Beer Distributors, Inc., 300 F.3d 217, 229 (2d Cir. 2002).

4

The Motor Carrier exemption provides that the FLSA's overtime provision "shall not apply . . . to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to [49 U.S.C. §] 31502." 29 U.S.C. § 213(b)(1).

This exemption serves to prevent conflict between the FLSA and the Motor Carrier Act of 1935 ("MCA"). Dauphin v. Chestnut Ridge Transportation, Inc., 544 F. Supp. 2d 266, 271 (S.D.N.Y. 2008). Congress enacted the MCA "to promote efficiency, economy, and safety in interstate motor transport." Khan v. IBI Armored Services, Inc., 474 F. Supp. 2d 448, 450–51 (E.D.N.Y. 2007). To help achieve that purpose, it gave the Interstate Commerce Commission — and later, the Department of Transportation — the authority to regulate the maximum hours of work for employees of "common carriers" and "contract carriers" by motor vehicle. Masson v. Ecolab, Inc., No. 04–cv–4488 (MBM), 2005 WL 2000133, at *5 (S.D.N.Y. Aug. 17, 2005). Thus, "[s]o that the overtime provisions of the FLSA and the MCA do not overlap or interfere with each other, those employees whose working hours are regulated by the DOT are exempt from the FLSA's requirements." Id.

29 C.F.R. § 782.2 explains that for an employee to be exempt under the Motor Carrier exemption, (i) the employer must be "within the jurisdiction of the Secretary of Transportation by virtue of operating as a motor carrier or motor private carrier," as defined by 49 U.S.C. §§ 31502(b)(1) & (2), Dauphin v. Chestnut Ridge Transp., Inc., 544 F. Supp. 2d 266, 273 (S.D.N.Y. 2008)(internal quotation marks omitted); and (ii) the employee must be "engaged in activities that affect the safety of operation of motor vehicles transporting property in interstate commerce." McGuiggan v. CPC Int'l, Inc., 84 F. Supp. 2d 470, 480 (S.D.N.Y. 2000).

The Defendant contends that, at all relevant times, it qualified as a "motor private

carrier" under the MCA.

Of relevance here, a motor carrier is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C § 13102(14). Conversely, a "motor private carrier" is "a person, other than a motor carrier, transporting property by motor vehicle when - (A) the transportation is as provided in section 13501 of this title; (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." 49 U.S.C. § 13102(15)(A)-(C)

Here, the Defendant is "the owner . . . of the property being transported," and "the property is being transported for sale . . . or to further a commercial enterprise." Id. Thus, the Defendant fits neatly within the definition of a motor private carrier if the transportation it performs is "as provided in section 13501" of title 49.

However, the Court concludes that, inasmuch the Defendant's operations involve loading its merchandise on trucks owned by third-party entities, such as UPS and FedEx, to be transported in interstate commerce, the Defendant does not engage in transportation "as provided in section 13501." "Transportation" within the meaning of the MCA occurs when passengers or property are transported "by" the motor carrier or motor private carrier. Here, the third party entities, rather than the Defendant, "transport[ed]" the Defendant's merchandise. To hold otherwise would bring nearly all manufacturers or suppliers within the definition of "motor vehicle carrier."

However, the Court recognizes that the Defendant at relevant times owned vans that were "routinely driven out of state carrying parts, supplies, tools and/or autoclaves to customers throughout the United States." (Polansky Decl., at ¶6.).

At this point, a brief history of the scope of the Motor Carrier Act is in order. Prior to August 2005, the Motor Carrier exemption applied regardless of the weight of the vehicle driven. See 49 U.S.C. § 13102 (2002)("motor carrier" as used in 49 U.S.C. § 31502(b) meant simply "a person providing motor vehicle transportation for compensation.").

On August 10, 2005, Congress passed the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA–LU"), which amended key definitions relating to the exemption. See Pub. L. No. 109–59, 199 Stat. 1144 (2005). "Motor carrier" was redefined as a "person who provides commercial motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). "Commercial motor vehicle," in turn, was defined as "a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle — (A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater." 49 U.S.C. § 31132(1).

On June 6, 2008, Congress restored the pre-SAFETEA–LU definition of "motor carrier" when it passed the SAFETEA–LU Technical Corrections Act ("TCA") of 2008, Pub. L. No. 110–244, §§ 305–06, 122 Stat. 1572, 1620–21 (2008). Despite this language change, the TCA reconfirmed that the Motor Carrier Act exemption does not apply to motor vehicles that weigh 10,000 pounds or less. See 110 P.L. 244, § 306; 122 Stat. 1572, 1620–21 (2008). Therefore, the fact that the Plaintiff's employment with the Defendant pre-dated and post-dated passage of the TCA is irrelevant for purposes of evaluating the Defendant's reliance on the MCA exemption.

In any event, the Defendant concedes that its vans weighed less than 10,001 pounds. Thus, the Defendant has failed to satisfy its burden with respect to the MCA exemption in that it was neither a "motor carrier" nor "motor private carrier" within the meaning of the MCA. For this reason, the Court denies that part of the Defendant's motion for summary judgment

7

dismissing the Plaintiff's FLSA claim based on that exemption. Further, the Court finds, as a matter of law, based on the undisputed facts that the MCA exemption does not apply here and that, therefore, the Defendant may not rely on it at the trial to defeat the Plaintiff's FLSA claim. The Court need not address the second prong of the MCA exemption, namely whether the Plaintiff "engaged in activities that affect the safety of operation of motor vehicles transporting property in interstate commerce." McGuiggan, 84 F. Supp. 2d at 480.

Relatedly, the Court denies that part of the Defendant's motion for summary judgment dismissing the Plaintiff's NYLL claim for overtime pay based on the MCA exemption. Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC, 865 F. Supp. 2d 257, 268-69 (E.D.N.Y. 2012)("The New York State Department of Labor takes the position that the overtime provisions contained in that law expressly incorporate the FLSA's exemptions, see 12 N.Y.C.R.R. § 142–2.2. Federal courts have followed the Department's guidance, applying FLSA exemptions to state Labor Law claims. This includes the motor carrier exemption.")(internal citation omitted). Further, the Court finds as a matter of law that the MCA exemption does not apply here and that, therefore, the Defendant may not rely on it at the trial to defeat the NYLL claim.

C. The Wage Notice and Payroll Statement Claims

The Defendant also seeks summary judgment dismissing the Plaintiff's wage notice and payroll statement claims under the New York Labor Law. "As of April 9, 2011, an employer must provide an employee with a wage notice within ten business days of the start of employment and then annually every February thereafter." Yuquilema v. Manhattan's Hero Corp., No. 13-CV-461 (WHP)(JLC), 2014 WL 4207106, at *10 (S.D.N.Y. Aug. 20, 2014) report and recommendation adopted, No. 13CV461, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014). The

8

notice must include, among other items, information about the rate and basis of pay, any tip or other allowances claimed by the employer, and the name and principal address of the employer, and it must be provided in English or in the primary language of the employee. See NYLL § 195(l)(a). "If any employee is not provided within ten business days of his or her first day of employment a notice . . . he or she may recover in a civil action damages of fifty dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of two thousand five hundred dollars." NYLL § 198(l-b).

Here, the Plaintiff commenced his employment in 2007, four years prior to the time the requirements of NYLL § 195(1)(a) took effect. Therefore, the first calendar year the Defendant was statutorily required to provide the Plaintiff with a wage notice was in 2012, and it did provide that notice. Furthermore, even if it did not provide such notice, "[t]he plain language of the statute . . . confers a private right of action upon those who do not receive their notice at the time of hiring, but not upon those who do not receive it on or before February first of any subsequent year." Guan Ming Lin v. Benihana New York Corp., No. 10–CV–1335 (RA)(JCF), 2012 WL 7620734, at *2 (S.D.N.Y. Oct. 23, 2012)(finding that plaintiffs whose employment predated April 9, 2011 ineligible for recovery), report and recommendation adopted, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013). Accordingly, the Court grants that part of the Defendant's motion for summary judgment dismissing the Plaintiff's wage notice claims under the NYLL.

However, the Court reaches a different conclusion with respect to the Plaintiff's claim of a recordkeeping violation under NYLL § 195(3). This provision requires employers to provide employees with a statement with every payment of wages listing, among other items, the dates of work covered by that payment of wages, rate of pay, deductions, allowances claimed as part of the minimum wage and commission. "If an employee is not provided a statement, as required by

9

NYLL § 195(3), she is entitled to recover, through a civil action, 'damages of one hundred dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of twenty-five hundred dollars, together with costs and reasonable attorney's fees.'" Wei Yan Yan v. 520 Asian Rest. Corp., No. 13-CV-2417 (KNF), 2014 WL 7177259, at *8 (S.D.N.Y. Dec. 17, 2014)(quoting NYLL § 198(1)(1–d)).

In this case, there exists a genuine issue of material fact as to whether the Defendant properly documented the Plaintiff's overtime pay.  As noted above, the Court finds that the MCA exemption is inapplicable to the Plaintiff's claims under the FLSA and NYLL.  Accordingly, the Court denies that part of the Defendant's motion for summary judgment dismissing the Plaintiff's claim under NYLL § 195(3).

The Court next considers the propriety of summary judgment with respect to the Defendant's alleged violation of NYLL § 195(4).  That provision requires employers

> to establish, maintain[,] and preserve for not less than three years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.  For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the payroll records shall include the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, and the number of overtime hours worked.

Id. When an employer's records are inadequate, an employee may meet his or her burden of proving the number of hours worked by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 552 (S.D.N.Y. 2011)(citation omitted). However, nothing in the NYLL authorizes an independent cause of action based on a violation of § 195(4).  Accordingly, to the extent the Plaintiff seeks to recover based solely on the

Defendant's alleged violation of § 195(4), the Court grants the Defendant's motion for summary judgment dismissing this claim.

D.  The Unjust Enrichment Claim

The Plaintiff also asserts an unjust enrichment claim under New York law, seeking to recover for the Defendant's unpaid social security contributions based on the Plaintiff's earnings; unemployment benefit contributions; and workers' compensation premiums.  While the complaint raises a general claim of unjust enrichment, it makes no reference to this desired relief based on the unjust enrichment claim, nor has the Plaintiff moved to amend the prayer for relief. The Second Circuit has held that "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint." Shah v. Helen Hayes Hosp., 252 Fed. Appx. 364, 366 (2d Cir. 2007)(citing Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998)). Therefore, the Court the declines to consider the Plaintiff's unjust enrichment claim inasmuch as the plaintiff seeks to recover based on the Defendant's unpaid social security contributions; unemployment benefit contributions; and workers' compensation premiums.

Even were the Court to treat the Plaintiff's memorandum in opposition to the Defendant's motion for summary judgment as an implicit motion for leave to amend the prayer for relief related to the unjust enrichment claim, the Court would deny that motion – at least with respect to the proposed claims for recovery based on unpaid social security or unemployment benefit contributions – as futile.  "[T]here is no private cause of action under [the Federal Insurance Contributions Act]." Ferro v. Metro. Ctr. for Mental Health, No. 13 CIV. 2347 (PKC), 2014 WL 1265919, at *6 (S.D.N.Y. Mar. 27, 2014) reconsideration denied, No. 13 CIV. 2347 (PKC), 2014 WL 2039132 (S.D.N.Y. May 16, 2014).  Nor does the Plaintiff cite any authority authorizing a private cause of action for his desired unemployment benefit contributions.

11

To the extent the Plaintiff seeks to recover unpaid overtime pay through his unjust enrichment claim, the claim must also be dismissed as a matter of law. "Generally, if there is an adequate remedy at law, a court will not permit a claim in equity." Bongat v. Fairview Nursing Care Ctr., Inc., 341 F. Supp. 2d 181, 188–189 (E.D.N.Y. 2004)(citing Strom v. Goldman, Sachs & Co., 202 F.3d 138, 144 n. 6 (2d Cir. 1999)("Equity typically denied relief in a proceeding seeking restitution . . . on the theory of unjust enrichment because the remedy at law, an action for damages, typically was adequate."). Several courts have dismissed similar equitable claims in favor of statutory wage-claims in this precise context. Scarpinato v. E. Hampton Point Mgmt. Corp., No. 12-CV-3681 (JFB)(GRB), 2013 WL 5202656, at *13 (E.D.N.Y. Sept. 13, 2013)("Since plaintiff has a New York Labor Law claim for the unpaid wages, her claim for equitable relief must be dismissed."); Bongat, 341 F. Supp. 2d at 188–89 (dismissing *quantum meruit* and unjust enrichment claims in favor of statutory overtime-wage law claims arising from the same nexus of operative fact).

## II.  CONCLUSION

In sum, the Defendant's motion for summary judgment dismissing the complaint is granted in part and denied in part. The motion is granted as to (1) the Plaintiff's wage notice claim under NYLL § 198(l-b); (2) the Plaintiff's claim under NYLL § 195(4); and (3) the Plaintiff's unjust enrichment claim. The motion is denied as to (1) the Plaintiff's FLSA and NYLL unpaid overtime claims and (2) the Plaintiff's claim under NYLL § 195(3).

**SO ORDERED.**

Dated: Central Islip, New York
January 12, 2015

                                           _/s/ Arthur D. Spatt_
                                           ARTHUR D. SPATT
                                           United States District Judge